## The Attorney General v. Richard S. Thomas and another.

*Indemnity lands: Swamp lands: State patent: Private entry: Public offering: Legislation.* A patent based on a sale by private entry at the state land office, conveying "indemnity lands" of the state which had never been offered for sale at public auction is held void; these lands, if not to be considered as included by intendment in the general designation of swamp lands, so as to be subject to the state regulations as to sales of such lands, were not subject to sale at all, for the want of any legislation providing for their sale.

*Bona fide purchaser.* Where one knowingly, and by collusion with the deputy commissioner, has obtained a patent from the state of lands not subject to sale, and on the next day has made sale of them at a distant place to another, who had never seen the lands, but who paid for them almost double their valuation, they being wild and scattered lands, it will require a pretty strong showing to establish the *bona fides* of such a purchase.

*Information: Vacating a patent: Refunding purchase price: Decree: Script.* Under an information to vacate a patent thus obtained, which treats the purchase from the state as made for cash, and asks no relief on any other basis, a decree that the purchase price be refunded in script is unwarranted.

*Heard January 26. Decided February 26.*

Appeal in Chancery from Ingham Circuit.

*Isaac Marston, Attorney General,* for complainant.

*B. F. Spencer, D. C. Holbrook* and *Ashley Pond,* for defendants.

COOLEY, J.

An information was filed in this case to vacate a patent which had been issued to Richard S. Thomas for lands afterwards conveyed by him to the respondent Irvin. The lands were of that class known as "indemnity lands," which had been granted by the general government to the state to indemnify the state for swamp lands to which it was entitled under the legislation of congress, but which had become lost to it in consequence of being taken with script or land warrants issued by federal authority. The lands were not swamp lands in fact, and one question that

arises in the case is, whether, before they could be subject to private entry at the state land office, it was necessary they should be offered for sale at public auction. It is not claimed that these were so offered, and it is not denied that the existing legislation made it necessary that swamp lands should be; but it is said none of the statutory provisions relating to public offerings mention the "indemnity lands." On the other hand, the state appears to regard these as taking the place of swamp lands, and as being included by intendment in the general designation of swamp lands in the statutes which provide for the latter being offered and sold. If this view is correct, the lands were not subject to sale by private entry, because they had never been publicly offered; but if it is erroneous, it seems equally clear that the sale was unwarranted, because, if we consider these a separate class of lands, not included in the term "swamp lands," as used in the statute, then there seems to be no statute on the subject which provides for their sale, and legislation would be essential. In any view of the case, the sale to Thomas was void.

Irvin claims to be a *bona fide* purchaser. To prove this he makes a witness of Thomas, whose testimony shows, beyond a question, that he at least did not buy in good faith; but that with full knowledge that the lands were not in market he bought them by collusion with the deputy commissioner of the state land office, whose inducement to the transaction was, that while he received cash from Thomas, he could turn in to the state, swamp-land script, which was greatly depreciated. Thomas testifies that he sold to Irvin the day after his entry, and that the sale was made at Traverse City, a great distance from Lansing, where the commissioner's office is held. His own haste in getting these lands off his hands, must therefore be regarded as somewhat unusual. Moreover, he informs us that though an agent of Irvin had seen the lands, Irvin himself never had, and that the price paid for these and others purchased together, was the full value by the agent's estimate, and

almost double the valuation which Thomas himself puts upon them. It is safe to say that this haste of Irvin to become *bona fide* purchaser of wild and scattered lands which he had never seen, at the full estimated value, and greatly beyond the real value, is something quite unprecedented, and calls for an explanation which, unfortunately, neither Irvin nor his agent gives us. We must be permitted, therefore, to doubt the *bona fides* of his purchases.

The circuit court was right in decreeing the cancelment of the patent. In one particular, however, there was error. The court decreed that the purchase price should be refunded in script. The information treats the purchase made by Thomas as made for cash, and asks no relief on any other basis.

The decree must be modified in this regard, with costs of this court to the respondents, and in all other respects affirmed.

GRAVES, CH. J., and CAMPBELL, J., concurred.

CHRISTIANCY, J., did not sit in this case.